THE STATE OF OHIO, APPELLEE, v. ROBINSON, APPELLANT.

(No. 3803—Decided January 11, 1956.)

*Mr. William A. Ambrose,* prosecuting attorney, and *Mr. Harold H. Hull,* for appellee.

*Mr. Clyde W. Osborne, Sr.,* and *Mr. Clyde W. Osborne, Jr.,* for appellant.

DOYLE, J.   Charles Robinson was indicted by the Grand Jury of Mahoning County for murder in the first degree, charged with the fatal shooting of one, Pedro Hernandez Vasquez.   The accused was tried on the indictment by three judges of the Court of Common Pleas, after the defendant waived a trial by jury in writing.   Pursuant to this form of statutory trial, the court found:

"We, the court in this case, find the defendant, Charles

Robinson, guilty of murder in the second degree in manner and form as he stands charged in the indictment and not guilty as otherwise charged therein."

Following the overruling of a motion for new trial, the defendant was sentenced to the penitentiary.

Within the time provided by law, Robinson appealed to the Court of Appeals, which court, upon hearing, found "error manifest upon the face of the record to the prejudice of the appellant, in this, to wit: The evidence is insufficient to warrant conviction of murder in second degree but sufficient only to warrant conviction of manslaughter in the first degree, degree of crime reduced to manslaughter in first degree. It is therefore considered, ordered and adjudged by this court that the judgment of the Court of Common Pleas be and the same is hereby reversed and held for naught, decree and judgment of conviction of manslaughter in first degree is hereby entered and accused ordered to appear before the court for sentence * * *."

The Court of Appeals thereupon placed the defendant on probation for a period of five years.

The cause was subsequently admitted for hearing in the Supreme Court of Ohio, following the allowance of a motion by the state for leave to appeal. The decision there rendered is reported in *State* v. *Robinson,* 161 Ohio St., 213, 118 N. E. (2d), 517, and is in effect that the Court of Appeals erred in modifying the judgment of the Court of Common Pleas by reducing the degree of homicide; that "It was for the three-judge court [Common Pleas], as the triers of facts, to determine whether the accused reasonably and honestly believed that his only means of escape from danger of death or serious bodily injury was by taking human life, or whether the killing was done in the heat of passion without sufficient time intervening for reflection or cooling off."

The court further said:

"There is sufficient evidence, in the record, to have warranted the three-judge trial court in concluding that the accused had sufficient time for reflection and for cooling off between the time of the alleged provocation and the time he fired the fatal shot."

The Supreme Court then reversed the judgment of the

Court of Appeals modifying the judgment of the Court of Common Pleas, and remanded the cause to the Court of Appeals "to consider and pass upon the weight of the evidence." It appears that the Court of Appeals had not passed on this claim of error.

Upon remand from the Supreme Court, the Court of Appeals conducted a second hearing of the cause, and, in consideration thereof, found that the conviction of murder in the second degree was against the manifest weight of the evidence, reversed the judgment of the trial court, and ordered that the defendant "be, and he hereby is found guilty of manslaughter in the first degree."

The Court of Appeals, for the second time, placed the defendant on probation.

The state then appealed this judgment to the Supreme Court, and the judgment of the Court of Appeals, in so far as it determined the defendant guilty of manslaughter, was reversed. However, the ruling of the Court of Appeals that the finding of the three-judge trial court that the defendant was guilty of murder in the second degree was against the weight of the evidence, was allowed to stand. The cause was then remanded by the Supreme Court to the Court of Common Pleas for a new trial.

This appeal is reported in *State* v. *Robinson,* 162 Ohio St., 486, 124 N. E. (2d), 148, wherein it is stated:

"Although there is *sufficient evidence* to sustain a verdict or finding of guilty of second degree murder, a Court of Appeals has the power to decide that such verdict or finding is *against the weight of the evidence.* The Supreme Court is not required to and ordinarily does not weigh the evidence. Therefore, it will not review the determination by a Court of Appeals that a verdict or finding is against the weight of the evidence. Where a Court of Appeals has decided that a verdict or finding of guilty of second degree murder is against the weight of the evidence but where, as in the instant case, this court has held that such a verdict or finding is sustained by *sufficient evidence* such Court of Appeals has no power to modify such verdict or finding by reducing it to a verdict or finding of guilty of manslaughter. Its only power is to order a new trial."

The cause then came on for trial on the indictment charging murder in the first degree, in the Common Pleas Court, on the 25th day of April, 1955. A jury was duly empaneled, the trial proceeded for several days, and, at the conclusion thereof, the jury spoke as follows:

"We, the jury in this case, find the defendant, Charles Robinson, guilty of murder in the second degree in manner and form as he stands charged in the indictment, and not guilty as otherwise charged therein."

Upon this verdict the defendant was sentenced to the penitentiary. A motion for new trial was overruled.

In the appeal by the defendant from this judgment to the Court of Appeals, the following errors are assigned:

"1. That the trial court erred in overruling the motion to quash as to that part of the indictment charging first degree murder.

"2. That the court erred in overruling the motion made by the defendant at the conclusion of the state's evidence.

"3. That the court erred in overruling the motion of the defendant made at the conclusion of all the evidence.

"4. That the trial court erred in refusing to give before and after argument defendant's request No. 1.

"5. That the verdict of the jury is against the manifest weight of the evidence.

"6. That the verdict of the jury as to the degree of the crime, to wit, second degree murder, is not sustained by the evidence in this, to wit, that certain material elements of the crime of second degree murder are not supported by the evidence beyond the existence of a reasonable doubt."

With the records of the various proceedings before us, as well as a complete transcript of the last trial upon which the judgment now under review is predicated, it is pertinent to observe that the primary claims of error fall within two main categories and raise the following questions:

1. Did the conviction of a lesser offense than that charged in the indictment in the first trial in the Common Pleas Court, constitute a bar to a prosecution for a greater offense upon reversal and remand under the existing circumstances?

2. Is there sufficient evidence to support a conviction of

second degree murder, or is a conviction on this degree of homicide manifestly against the weight of the evidence?

On the question first posed above, the conflict of opinion existing in the courts of sister states over the years seems not to have disturbed the courts of Ohio, at least in the last century or more. The case most frequently cited is *State* v. *Behimer,* 20 Ohio St., 572. The syllabus is:

"Where, on a trial for murder, the defendant is found guilty of a lower degree of homicide than the highest degree charged in the indictment; and, on his motion, a new trial is granted, the effect of granting the new trial is to set aside the whole verdict, and leave the case for retrial upon the same issues as on the first trial."

(This case was decided in 1870, at which time the Constitution of Ohio provided, as it does now, against double jeopardy.)

See also: *Sutcliffe* v. *State,* 18 Ohio, 469, 51 Am. Dec., 459; *Hurley* v. *State,* 4 C. C., 425, 2 C. D., 425.

In more recent years the Legislature took the law in hand. Section 2945.82, Revised Code, of the present Code of Criminal Procedure, reads:

"When a new trial is granted by the trial court, or when a new trial is awarded on appeal, the accused shall stand for trial upon the indictment or information as though there had been no previous trial thereof."

Much of the doubt surrounding the question of the effect of a new trial in a criminal case seems to be due, we think, to the many conflicting views of courts and judges in respect to the operation of the constitutional inhibition against subjecting a person to be twice put in jeopardy for the same offense.

Section 10, Article I of the Ohio Constitution is as follows:

"* * * No person shall be twice put in jeopardy for the same offense."

It is obvious that this provision is modeled from a part of the Fifth Amendment to the Constitution of the United States, wherein it is stated:

"* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

The Fifth Amendment to the Constitution of the United States is not directed to the states, but solely to the federal gov

ernment, and creates immunity in the federal courts from double jeopardy. It does not operate on state courts. *Palko* v. *Connecticut,* 302 U. S., 319, 82 L. Ed., 288, 58 S. Ct., 149.

We do not find it necessary to review the conflicting thought expressed by many judges of the Supreme Court of the United States in their attempt to mark the limits of the constitutional prohibition. We shall confine ourselves to the law of this state in our interpretation of our own state constitution as it operates on state courts.

The right to a review by appeal or writ of error did not belong to the prisoner at common law, and the principle of law in its origin was one forbidding a trial in a new and independent case when a man had already been tried once.

By statute in this state, an accused convicted of crime has the right of appeal and the right to show, if he can, that his substantial rights were prejudiced. If he can make such showing in the appellate courts, the judgment of conviction will be reversed, and the cause may be remanded for a new trial; and, under Section 2945.82, Revised Code, *supra,* he "shall stand for trial upon the indictment * * * as though there had been no previous trial thereof."

These sections in the Code of Criminal Procedure are clear and explicit, and in no wise contravene the letter or the spirit of the constitutional prohibition against double jeopardy. They do not provide for another trial in a new and independent case. The effect of the defendant's appeal is to continue the trial under the indictment in the appellate court; and, if reversal of the judgment of conviction follows, that judgment, as well as the record of the former trial, has been annulled and expunged by the judgment of the appellate court, and they are as though they never had been; and the indictment is left to stand as to the crime of which the prisoner had been charged as though there had been no trial.

It seems evident that no constitutional right of the accused is invaded, for the law has accorded him the privilege of appeal of which he may, but is not required to, avail himself. If he does appeal and secures a reversal of the judgment of conviction, even though it be a conviction of a lower included offense, the effect of such reversal at the instance of the accused is to

set aside and nullify the *whole* verdict. Such has been the law of this state for many years.

The same principle denying the rule of double jeopardy is applicable to a reversal, by higher reviewing courts, of the reversal or modification of a judgment by a lower reviewing court. See: 2 Ohio Jurisprudence (2d), Appellate Review, Section 179, at p. 788, and cases cited therein.

In applying this principle of law to the instant case, where the Supreme Court of Ohio, after reversing and nullifying the judgment of the Court of Appeals, finding the accused guilty of manslaughter, remanded the case for a new trial in the original trial court pursuant to the Court of Appeals ruling that the verdict and judgment of murder in the second degree was manifestly against the weight of the evidence, it in effect placed the defendant in the same position as though no trial had ever been had.

By the Supreme Court's ruling, the record was expunged, except for its own judgment and the judgment of the Court of Appeals finding the judgment of murder in the second degree manifestly against the weight of the evidence.

We conclude that it was entirely proper to require the accused to stand trial on the indictment for murder in the first degree, for he himself had removed the bar which was effective to prevent his further trial for the offense of first degree murder. See: 15 American Jurisprudence, Criminal Law, Section 432.

Looking now to the evidence, we find it sufficient to sustain a verdict and judgment of murder in the second degree. It was for the jury to weigh the evidence and to draw therefrom all reasonable inferences. We find the verdict and judgment within the limits of the law.

In consideration of all of the errors assigned, we find none prejudicial to the rights of the appellant; and, as a consequence thereof, the judgment must be affirmed.

*Judgment affirmed.*

STEVENS, P. J., and HUNSICKER, J., concur.

STEVENS, P. J., HUNSICKER and DOYLE, JJ., of the Ninth Appellate District, sitting by designation in the Seventh Appellate District.