Commonwealth *v.* Kelly, Appellant.

300

Submitted September 9, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John S. Thome, Jr.,* Assistant Public Defender, for appellant.

*Marc I. Rickles,* Assistant District Attorney, *Stephen B. Harris,* First Assistant District Attorney, and *Kenneth G. Biehn,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., June 24, 1975:

Appeal is taken from judgment of sentence rendered following conviction at trial without jury on an indictment charging operation of a motor vehicle while under the influence of intoxicating liquor.[1] Pursuant to said statute, appellant was sentenced to pay court costs and a fine of $250.00. This appeal follows denial of post-trial motions.

Factually, it appears on the record that a member of the Warminster Township, Bucks County, police department arrived upon the scene of a three-car automobile

---

1. A violation of "The Vehicle Code," Act of 1959, April 29, P. L. 58, Section 1037, 75 P.S. §1037.

accident. Appellant admitted that he had been driving one of the cars involved. His appearance and the odor surrounding appellant led the investigating officers to conclude that appellant was intoxicated. Appellant was arrested and was asked if he would consent to take a breathalyzer test, to which question appellant replied affirmatively. Being unable to perform this test at the scene, the officer transported appellant to the station-house, again questioning appellant if he would consent to the test and receiving consent, the test was then administered and registered positive.

Appellant challenges the judgment of sentence by arguing that the results of the breathalyzer test should have been suppressed when proper motion was made therefor, reasoning that the arrest was unlawful as being based upon a misdemeanor committed outside the view of the officer. See *Commonwealth v. Hargrave*, 212 Pa. Superior Ct. 167, 240 A.2d 570 (1968). Arguing the alleged illegality of the arrest, appellant urges upon us the conclusion that a search, here the breathalyzer test, could not be conducted, pursuant to that arrest, and away from the scene of the accident. Because of appellant's unequivocal and freely-given consent to the test involved herein, we disagree.

We find that the factual situation of this case is within the purview of *Commonwealth v. Quarles*, 229 Pa. Superior Ct. 363, 324 A.2d 452 (1974). Therein, this court noted that while the "implied consent" law may allow an investigating officer to give a breathalyzer test at the scene, the officer must obtain an arrest warrant or have probable cause for a misdemeanor occurring in his presence, if the suspect is to be removed to the police station for testing. Our oft-stated concerns for the integrity of the individual's control over his person mandate this position.[2] *Quarles, supra,* provides an exception to this

---

2. We recognize that the ability of an investigating officer is somewhat expanded by an amendment to Section 1204 of the

in the situation where "a driver may actually consent to a seizure of his person and the administration of a test of his breath or blood." 229 Pa. Superior Ct. at 377.

In the instant case, we find such consent. At the scene of the accident, appellant gave his consent to be removed to the State Police barracks for a breathalyzer test. At the barracks, appellant again consented. We believe that these two circumstances, there being no indication that appellant was coerced or threatened into consenting, allow for the police action in conducting the test at a location some distance from the scene of the accident. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). We cannot agree with the dissent's reliance upon an inference that appellant was coerced into consenting by his implied or actual knowledge of the possible suspension of his driving license should he refuse a breathalyzer. No testimony supports an inference that this dilemma faced appellant and influenced his deliberations. We are not inclined to read into the fact situation something that is not present. Furthermore, when this inference is adopted, our case law regard-

---

"Motor Vehicle Code," Act of 1959, April 29, P. L. 58, 75 P.S. §1204, which provides *inter alia* as follows: "A peace officer may, upon view or upon probable cause without a warrant, arrest any person violating section 1037 of this act in cases causing or contributing to an accident." From the effective date of this amendment, July 20, 1974, an officer may arrest an individual at the scene of the misdemeanor, if the same had been committed outside the view of the officer, and if he is provided probable cause to suspect that the individual subjected to arrest has operated his vehicle in violation of the cited section. See the Concurring Opinion by PACKEL, J., in *Commonwealth v. Reeves*, 223 Pa. Superior Ct. 51, 297 A.2d 142 (1972). Thus the officer may rely on the information of informers at the scene, if he believes that they are reasonably trustworthy, to determine if the information is "sufficient to warrant a prudent man in believing that the petitioner [defendant] had committed or was committing an offense." (citation omitted) *McCray v. Illinois*, 386 U. S. 300, 304, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967).

ing the effect of uncoerced consent is nullified. Consequently, absent clear evidence of coercion, as we see in the Hobson's choice presented to the defendant in *Commonwealth v. Modich*, 233 Pa. Superior Ct. 92, 334 A.2d 717 (1975), we are not willing to accept this finding of implied coercion.

Judgment of sentence affirmed.

———

DISSENTING OPINION BY SPAETH, J.:

Appellant was tried by a judge sitting without a jury on November 29, 1973, and was found guilty of operating a motor vehicle while under the influence of intoxicating liquor.[1] The only issue raised on this appeal is whether the results of a breathalyzer test were properly admitted into evidence.

On November 23, 1972, at about 5:00 p.m., a Warminster Township police officer was dispatched by police radio to the scene of a three car accident. When he arrived he asked the persons standing around the cars whether anyone was injured. Several bystanders responded in the negative. He then asked who had been driving the Chevrolet, and appellant identified himself as the driver of that car. Appellant did not seem injured to the police officer, but the officer noted that he appeared "wobbly," his speech was slow, and his breath smelled of alcohol. From these observations the officer concluded that appellant was under the influence of alcohol in violation of The Vehicle Code, *supra*. The officer then arrested appellant, placed him in the back of the patrol car, gave him the warnings required by *Miranda v. Arizona*, 348 U.S. 436 (1966), and asked him whether he would consent to a breathalyzer test. Appellant said he would take the test. After the officer had completed his accident report, he took appellant to the State Police Barracks.

———

1. The Vehicle Code, Act of April 29, 1959, P.L. 58, §1037, 75 P.S. §1037.

There appellant was again given the *Miranda* warnings, and once again he agreed to take the breathalyzer test. The test was then administered, approximately forty-five minutes after the officer's first contact with appellant. The results indicated that the amount of alcohol by weight in appellant's blood was .19.[2] Appellant filed a motion to suppress these results, but after a hearing the motion was denied.

*Schmerber v. California,* 384 U.S. 757 (1966), and *Commonwealth v. Murray,* 441 Pa. 22, 271 A.2d 500 (1970), make it clear that the administration of a blood test constitutes a search and seizure within the meaning of the Fourth Amendment. Likewise, the administration of a breathalyzer test must be considered a search and seizure. *Commonwealth v. Quarles,* 229 Pa. Superior Ct. 363, 377 n. 4, 324 A.2d 452, 460 n. 4 (1974). Thus, before the results of a breathalyzer test may be admitted into evidence the requirements of the Fourth Amendment must be satisfied. "As a general rule the Fourth Amendment requires as a prerequisite to [a search and seizure] the issuance of a search warrant by a magistrate who has made an independent judgment as to probable cause." *Commonwealth v. Maione,* 227 Pa. Superior Ct. 239, 243, 324 A.2d 556, 558 (1974). When, as here, there is no search warrant, the warrant requirement may be dispensed with if the search was conducted incident to a lawful arrest, pursuant to valid consent, or in circumstances falling within one of the recognized exceptions to the warrant requirement. *Commonwealth v. Quarles, supra* at 377, 324 A.2d at 460; *United States v. Mapp,* 476 F.2d 67, 76 (2d Cir. 1973).

---

2. According to subsection (c)(3) of the implied consent law, The Vehicle Code, *supra* at §624.1, added Act of July 28, 1961, P.L. 918, §1, as amended Act of July 31, 1968, P.L. 758, No. 237, §1, Act of December 22, 1969, P.L. 392, §1, 75 P.S. §624.1 (c)(3), where a breath test yields results of .10 or higher "it shall be presumed that the defendant was under the influence of intoxicating liquor."

The Commonwealth concedes that in the present case the admission of the test results cannot be justified as a search incident to a lawful arrest. In *Commonwealth v. Reeves*, 223 Pa. Superior Ct. 51, 52-53, 297 A.2d 142, 143 (1972), this court said that "[a] police officer may only make a warrantless arrest for a misdemeanor 'where he has probable cause to believe that a misdemeanor *is being committed in his presence.*' " Here, since appellant committed no offense in the officer's presence, his arrest was unlawful. The results of the breathalyzer test therefore could not be admitted as incident to a lawful arrest. *Commonwealth v. Kirkutis*, 234 Pa. Superior Ct. 18, 334 A.2d 682 (1975); *Commonwealth v. Jacoby*, 226 Pa. Superior Ct. 19, 311 A.2d 666 (1973); *Commonwealth v. Brown*, 225 Pa. Superior Ct. 289, 302 A.2d 475 (1973); *Commonwealth v. Reeves, supra*. The Commonwealth argues, however, that the test results were properly admitted because appellant consented to the test. Appellant, in contradiction, argues that this case is controlled by the decision in *Commonwealth v. Quarles, supra*, and that that decision requires suppression of the test results.

In *Commonwealth v. Quarles, supra*, the issue was whether the results of a breathalyzer test could be admitted into evidence as a search and seizure pursuant to defendant's implied consent under the provision of the "implied consent law," that "[a]ny person who operates a motor vehicle . . . shall be deemed to have given his consent to a chemical test of his breath. . . ." The Vehicle Code, *supra* at §624.1(a), 75 P.S. §624.1(a). There a policeman was dispatched to the scene of an automobile accident. When the officer arrived, the defendant identified himself as one of the drivers. After observing the defendant, the officer arrested him for drunken driving, read him his *Miranda* warnings, and, after the defendant agreed to submit to a breathalyzer test, took him to the police barracks where the test was administered. The hearing court granted the defendant's motion to suppress

the test results, and this court affirmed.[3] In construing the implied consent statute, we held that the results of a blood or breathalyzer test are admissible if administered without transporting the person and if the requesting officer has reasonable grounds to believe that the person had been driving while intoxicated. When, however, the person is transported to the place where the test is to be conducted, a lawful arrest is necessary before the results will be allowed into evidence. In *Quarles,* the defendant had been illegally arrested and transported twenty-two miles to the police barracks for the breath test. As a result, the test results were suppressed. Here, as was true of the defendant in *Quarles,* appellant was illegally arrested and transported to the police barracks. Appellant is therefore correct insofar as he says that *Quarles* prevents his test results from being admitted into evidence on the basis of *implied* consent. The Commonwealth, however, is arguing more than implied consent; it contends that appellant *actually* consented to the seizure and the test.

*Quarles* did not directly concern an issue of actual consent.[4] Nevertheless, it was noted in the opinion that "[i]t is possible that a driver may actually consent to a seizure of his person and the administration of a test of his breath or blood. Actual consent may then provide a constitutional basis for the seizure and test. Such consent [though] must appear . . . to have been voluntary. . . . *Schneckloth v. Bustamonte,* 412 U.S. 218, 228 (1973)." *Id.* at 377-378, 324 A.2d at 460. Thus if appellant did

---

3. WATKINS, HOFFMAN, and CERCONE, JJ., concurred in the result; WRIGHT, P.J., and SPAULDING, J., did not participate in the decision.

4. "There is no argument in the present case that appellant actually consented to being seized and having his breath tested. Instead, the Commonwealth argues that appellant, like every other driver licensed by the Commonwealth, impliedly consented." *Commonwealth v. Quarles, supra* at 378, 324 A.2d at 460.

actually consent to the seizure and test, the test results would be admissible. The question whether consent to a search is in fact voluntary or is the product of duress or coercion, express or implied, is a question of fact to be determined from all the circumstances. *Schneckloth v. Bustamonte, supra; People v. Michael,* 45 Cal. 2d 751, 753, 290 P.2d 852, 854 (1955). When the prosecution seeks to rely upon consent, it has the burden of proving that the consent was in fact freely given, *Bumper v. North Carolina,* 391 U.S. 543, 548-549; *Commonwealth v. Davenport,* 453 Pa. 235, 308 A.2d 85 (1973), and the proof must be by clear and positive testimony, *Judd v. United States,* 190 F.2d 649 (D.C. Cir. 1951).

In the present case, the Commonwealth established that appellant orally consented to the breathalyzer test on two distinct occasions, and that he did so after being given the *Miranda* warnings. Counterbalancing these facts, however, is the fact that appellant had been unlawfully arrested. The issue, therefore, is whether appellant's illegal arrest presented sufficient coercion to vitiate his consent. This court recently dealt with this issue in *Commonwealth v. Modich,* 233 Pa. Superior Ct. 92, 334 A.2d 717 (1975). There the defendant was involved in an automobile accident. Two police officers arrived after the accident and illegally arrested the defendant for driving while intoxicated and gave him his *Miranda* warnings. The officers then took the defendant to the police station, where he was again advised of his rights. The defendant was unwilling to take a chemical breath test without talking to his attorney. His attorney explained to him over the telephone that if he refused to take a breath test, his license would be suspended. The defendant took the test. On appeal this court held that the defendant's consent was not voluntary and granted him a new trial.[5] We reasoned as follows. Evidence

---

5. Price and Van der Voort, JJ., dissented.

obtained as the result of an illegal arrest must be suppressed as the fruit of the poisonous tree, *Wong Sun v. United States,* 371 U.S. 471 (1963), unless the evidence to be introduced has been obtained " 'by means sufficiently distinguishable to be purged of the primary taint' rather than 'by exploitation of that illegality.' *Betrand Appeal,* 451 Pa. 381, 389, 303 A.2d 486, 490 (1973) citing *Wong Sun, supra,* at 488." *Commonwealth v. Modich, supra* at 97, 334 A.2d at 719. The Commonwealth Court, in construing Section 624.1 of The Vehicle Code, *supra,*[6] held that a person arrested for drunken driving may have his license suspended if he refuses to submit to a chemical breath test, no matter how unlawful the arrest. *Commonwealth v. Miles,* 8 Pa. Commonwealth Ct. 544, 304 A.2d 704 (1973). Therefore, when the defendant was asked to take the breathalyzer test, he was faced with the dilemma of submitting to the test or losing his license. This dilemma was the product of his unlawful arrest. We concluded that the defendant "should not be forced to make such a choice solely because of an unlawful arrest. . . . [The defendant's] 'free' choice, on a closer examination, turn[ed] out to be Hobson's choice, and the inadmissible fruit of the illegal arrest." [Footnote omitted]

---

6. This Section reads in pertinent part:

"(a) . . . . If any person is placed under arrest and charged with the operation of a motor vehicle or tractor while under the influence of intoxicating liquor and is thereafter requested to submit to a chemical test and refuses to do so, the test shall not be given but the secretary may suspend his license or permit to operate a motor vehicle or tractor with or without a hearing. Any person whose license or permit to operate a motor vehicle or tractor is suspended under the provisions of this act shall have the same right of appeal as provided for in cases of suspension for other reasons.

. . . .

(h) The refusal to submit to a chemical test may be admitted into evidence as a factor to be considered in determining innocence or guilt."

*Commonwealth v. Modich, supra* at 97-98, 334 A.2d at 719-720.

In the present case, as in *Modich,* appellant's illegal arrest forced him to choose between submitting to the breathalyzer test or having his license suspended.[7] Thus under *Modich* appellant's decision to consent to the breathalyzer test cannot be considered free and voluntary, and it was constitutional error to admit the results into evidence.

The judgment of sentence should be reversed and a new trial granted.

HOFFMAN and CERCONE, JJ., join in this opinion.

---

7. Although appellant was not told by his lawyer that if he refused to submit to the test his license could be revoked, as the defendant in *Modich* was, it "has been said that 'all persons are presumed to know the law and are therefore presumed to be so informed as to [their] rights. They should acquaint themselves, at least with those laws most likely to affect their usual activities'." *Commonwealth v. Rutan,* 229 Pa. Superior Ct. 400, 402, 323 A.2d 730, 731 (1974), *quoting People v. Kovacik,* 205 Misc. 275, 292, 128 N.Y.S. 2d 492, 509 (1954). In *Rutan,* at pp. 402-403, n. 2, we took judicial notice of the fact that the rule on license revocation is summarized at page 61 of the Pennsylvania Manual for Drivers, July 73 ed., No. 95 0350-7200-0959, issued by the Secretary of Transportation, as follows:

"Implied Consent Law for operating under the influence of alcohol: Any person who operates a motor vehicle or tractor in this Commonwealth shall be deemed to have given consent to a chemical test of his breath for the purpose of determining the alcoholic content of his blood. Your refusal to submit to said test will cause your operating privileges to be suspended for six months to a year."

Thus, for the purposes of this case, since the Commonwealth presented no evidence to the contrary, it must be presumed that appellant, like the defendant in *Modich,* knew his license could be suspended if he refused to take the breathalyzer test.