# IN THE COURT OF APPEALS OF IOWA

No. 23-2075
Filed March 19, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KATRINA LASHAY BARNES,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Patrick H. Tott, Judge.

A defendant appeals the denial of her motion to suppress. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ella M. Newell, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

Two confidential informants (CIs) set up a controlled buy of fentanyl pills at the direction of the Sioux City Police Department. Under the supervision of a department detective, the CIs planned to meet with a drug-dealing brother-sister duo at a local residence. The residence was a conjoined duplex on a corner of two streets. One duplex unit's address was on one of the two streets and the other unit's address was on the other street. The CIs arrived at the duplex before the dealer siblings and noted they recognized the duplex as Katrina Barnes's residence. They also noted that Barnes was a known dealer of fentanyl pills.

Once the dealer siblings arrived, CI #1 got into their vehicle. The brother said that CI #1 needed to give the sister the money and she would go up to the door of one of the duplex units to exchange the money for the fentanyl. CI #1 refused to conduct the transaction that way and insisted on going with the sister. The sister relented, and the sister and CI #1 went to the door of the duplex unit (we will refer to this duplex unit as "unit number 1"). The sister knocked on the door, and Barnes answered. Barnes was not happy that the sister was not alone and turned the sister and CI #1 away. The sister and CI #1 returned to the siblings' vehicle. The siblings again told CI #1 to give the sister the money and she would enter the residence and come back with the fentanyl, but CI #1 called the deal off and left with CI #2.

Barnes's probation officer confirmed to investigators that she listed her address as one of the duplex units (we will refer to the duplex unit Barnes listed as her address as "unit number 2"), though she answered the door at unit number 1. Because the duplex units were in the same structure, investigators believed the

units could have access to each other, so they sought and obtained a search warrant for both units. While searching unit number 2, investigators found 1295 fentanyl pills and arrested Barnes. Following her arrest, Barnes waived her *Miranda*[1] rights and admitted to selling the pills.

The State charged Barnes with possession of controlled substances with intent to deliver, failure to affix a drug tax stamp, and two counts of child endangerment. Barnes "move[d] to suppress all the evidence allegedly recovered and all incriminating statements as a result of [the] search," claiming the search warrant was not supported by probable cause. The district court denied her motion. The case proceeded to a bench trial, and the district court found Barnes guilty of all charges.

Barnes appeals. She challenges the district court's ruling on her motion to suppress. She claims the search violated the federal and state constitutions because the warrant was issued without probable cause.[2] Because Barnes raises a constitutional challenge, our review is de novo. *State v. Bracy*, 971 N.W.2d 563, 567 (Iowa 2022).

---

[1] *See Miranda v. Arizona*, 348 U.S. 436, 444–45 (1966) (requiring warnings to suspects before subjecting them to custodial interrogation).

[2] Although Barnes argues the search violated both the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution, she does not raise differing arguments under the state constitution from its federal counterpart. So "we will apply the general standards as outlined by the United States Supreme Court for addressing a search and seizure challenge under the Iowa Constitution." *See State v. Tyler*, 830 N.W.2d 288, 291–92 (Iowa 2013) ("Where a party raises both state and federal constitutional claims but does not argue that a standard independent of the federal approach should be employed under the state constitution, we ordinarily apply the substantive federal standards but reserve the right to apply the standard in a fashion different from federal precedent.").

In relation to challenges to the issuance of a search warrant, "[t]he test for probable cause is whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." *Id.* (cleaned up). However, when conducting our review, we do not make an independent probable-cause determination. *Id.* Instead, we "determine whether the issuing judge had a substantial basis for concluding probable cause existed." *Id.* (cleaned up).

When reviewing a search warrant application, we only consider information presented to the issuing judge or magistrate. *Id.* In doing so, "we do not strictly scrutinize the sufficiency of the underlying affidavit." *Id.* (citation omitted). "The affidavit of probable cause is interpreted in a common sense, rather than a hypertechnical, manner." *Id.* (cleaned up). "We draw all reasonable inferences to support the . . . finding of probable cause and decide close cases in favor of upholding the validity of the warrant." *Id.* (citation omitted).

Barnes argues that the affidavit presented to the issuing judicial officer "rested solely upon information provided by the [CIs] and an unsuccessful controlled purchase, [so] the probable cause findings are inherently weak." She contends the warrant rests on the CIs' conclusory statements and the CIs' credibility was not properly established, invalidating the warrant.

Barnes is correct that when grounds for a warrant are supplied by an informant, "the application must establish the credibility of the informant, or the credibility of the information given by the informant." Iowa Code § 808.3(2) (2023). But Barnes's assessment of the evidence supporting the warrant misses the mark by looking at each component in isolation. Instead, we look at the totality of the

circumstances. *See State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997) (recognizing the issuing judge or magistrate considers the totality of the circumstances when making a probable cause determination). So we turn to those circumstances.

First, the affidavit accompanying the warrant application established the CIs' credibility. The affiant officer stated that both CIs had previously provided reliable information and had not provided false information in the past. In this investigation, the CIs told the investigator they knew of people (the siblings) who could sell them fentanyl pills, otherwise known as "blues." After contacting the siblings about buying "blues," the brother agreed to make the sale and set up a time and place to carry it out. That supported the CIs' credibility. When the CIs arrived at the duplex, they identified it as Barnes's home without prompting. Barnes answered the sister's knock when the sister and CI #1 went to the door of unit number 1, further establishing the CIs' credibility. This was all monitored by law enforcement as it occurred. Given the officer's sworn statement that both CIs had a history of providing reliable information and not providing false information coupled with the CIs corroborated conduct in this investigation, their credibility was sufficiently established.

As to the evidence supporting the warrant, there was a substantial basis to conclude that probable cause existed for both units. *See Bracy*, 971 N.W.2d at 567. The CIs and siblings met outside the duplex. The siblings explained that someone inside the duplex would have the drugs for purchase. Barnes, the known fentanyl dealer, answered the door to unit number 1 when the sister and CI #1 approached to complete the drug sale. Even after Barnes turned the sister and CI #1 away, the siblings still tried to complete the deal. They believed that if the

sister entered the duplex unit alone, she would be able to complete the sale because there were fentanyl pills inside for purchase. There was clearly probable cause to issue a warrant for unit number 1.

As for unit number 2, Barnes contends there was no probable cause to search it because the sister and CI #1 knocked on the door of unit number 1—suggesting, Barnes claims, that all the would-be controlled buy activity occurred at unit number 1. But it was Barnes's presence at unit number 1 during the attempted controlled buy, her reputation as a dealer of fentanyl pills, and the siblings' belief that the sister would be able to buy the fentanyl pills from Barnes if she returned alone that put the focus of the investigation squarely on Barnes. Given that unit number 2 was immediately next door to unit number 1 and within the same structure, coupled with unit number 2's strong connection to Barnes, there was reason to believe there was evidence of a crime inside unit number 2 as well.

The district court correctly upheld the search warrant, as it was supported by probable cause, and correctly denied Barnes's motion to suppress.

**AFFIRMED.**